**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **GARY DALE DAVIS, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | No. 4:16-CV-0429-O-BL |
| | § | |
| **NANCY A. BERRYHILL,**[1] | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Answer (doc. 6), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (docs. 8-9), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Br. (doc. 11); Def.'s Br. (doc. 12); Pl.'s Reply (doc. 13). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be reversed and remanded for further consideration.

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

[2]Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34. This recommendation will often refer to Plaintiff as Claimant, a designation used in social security cases.

# I. BACKGROUND

Plaintiff initially claimed disability due to optical neuropathy (vision impairment and blindness), diabetes, and post traumatic stress disorder ("PTSD"). R. 188. He filed an application for DIB in January 2013, alleging a June 26, 2012 onset of disability. R. 150, 185. At the alleged onset of his disability, he was forty-three years old and had an Associate's Degree. R. 39, 261. His date of last insured ("DLI") passed on December 31, 2016, *see* R. 185, or will expire December 31, 2017, *see* R. 19.[3] Therefore, the most relevant time period for his application and the Court's review commenced in June 2012 and either continued through December 2016 or continues through December 2017.

The Commissioner denied the applications initially and on reconsideration. *See* R. 61-88. On September 22, 2014, Administrative Law Judge ("ALJ") Carol Bowen held a hearing on Plaintiff's claim. *See* R. 35-60. On December 30, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that existed in significant numbers in the national economy. R. 17-29. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. § 404.1520(a)(4))[4] the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. R. 19.

The ALJ next determined that Plaintiff has the following severe impairments: "obesity, diabetes, optical neuritis, pseudotumor cerebri, depression, generalized anxiety disorder, and history of

---

[3]Plaintiff identifies 2017 as the correct year. Pl.'s Br. at 1 n.1. The circumstances of this case do not require the Court to determine which DLI is accurate.

[4]In March 2017, the Social Security Administration amended many regulations. However, the pertinent version for this case is the one in effect when the ALJ issued her decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam). Except to bring attention to the effective date of an amended provision, this recommendation will cite to the applicable version without parenthetical year information.

somatoform disorder." *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[5] R. 20-22.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[6] to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b).[7] R. 22. The ALJ found that Plaintiff could lift/carry ten pounds frequently and twenty pounds occasionally; sit for six hours; and stand/walk for six hours; but could not operate foot controls or climb ladders, ropes, or scaffolding. *Id.* The ALJ also found that Plaintiff was limited to frequent handling and fingering; "must avoid work at unprotected heights or with hazardous machinery," and any viable "job should not require vision 'accommodation' because Plaintiff has no peripheral acuity to the left. *Id.* Due to Plaintiff's mental impairments, the ALJ also found that Plaintiff could "sustain attention/concentration sufficient to understand, remember and carry out detailed, but not complex tasks in a

---

[5]Section 404.1525 explains the purpose and use of the listings of impairments.

[6]Section 404.1545(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. § 404.1546(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

[7]The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In general, light work "requires being on one's feet" for six hours of an eight-hour workday while "[s]itting may occur intermittently during the remaining time." Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A. 1983).

routine work setting on a regular and continuing basis." *Id.* Plaintiff could have no interaction with crowds and no more than occasional interaction with coworkers and supervisors. *Id.*

Based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior job, the ALJ concluded that Plaintiff could not perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy. R. 27-28. The VE identified three light, unskilled jobs and three sedentary, unskilled jobs that would be available for a hypothetical person with an RFC consistent with that assessed for Plaintiff. *See* R. 28. At Step 5 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the meaning of the Social Security Act between June 26, 2012, and the date of the ALJ's decision. R. 28-29.

The Appeals Council denied review on April 8, 2016, because it "found no reason" to review the ALJ's decision. R. 1-3. It considered additional information (Ex. 14E (representative's brief) and Ex. 26F (one page medical record)) and made it part of the administrative record. *See* R. 2, 4-5. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on June 7, 2016. *See* Compl. He presents three issues for review, including a failure to properly weigh medical opinions of treating sources when determining his physical RFC. *See* Pl.'s Br. at 1-2.

## II. LEGAL STANDARD

In general,[8] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)).  To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently work-ing; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).  If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448.  The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448.  If the Commissioner car-ries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy.  *Newton v. Apfel*, 209 F.3d 448,

---

[8]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older.  *See* 42 U.S.C. § 423(d)(1)(B).  This provision is inapplicable on the current facts.

453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## III. ANALYSIS

This appeal raises the following issues: (1) whether the ALJ properly considered medical opinions when determining Claimant's physical RFC; (2) whether the ALJ properly evaluated Claimant's credibility; and (3) whether ALJ relied on flawed testimony from a vocation expert. *See* Pl.'s Br. at 1.

### A. RFC Determination and Weight Given to Medical Evidence

Claimant contends that, when determining his physical RFC, the ALJ failed to properly consider opinions of his treating physicians, Prasanthi Tondapu, M.D., and John G. McHenry, M.D. Pl.'s Br. at 14-18. He argues that the ALJ should have accorded their opinions controlling weight.

*Id.* at 15-16. Alternatively, he argues that the ALJ improperly weighed the opinions by failing to conduct the detailed analysis required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) and applicable regulations. *Id.* at 16-18.

When considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions.[9] *See* 20 C.F.R. § 404.1527(b) (effective Aug. 24, 2012, to Mar. 26, 2017). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination of the claimant), or non-examining sources (a physician who reviews only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502 (effective June 13, 2011, to Mar. 26, 2017). The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 3:13-CV-4238-P,

---

[9]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). These regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d). Effective March 27, 2017, § 404.1527 sets out a two-tiered approach for applying the regulation: "For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." Regardless, the pertinent version for this appeal remains the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam).

2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 404.1527(c)(2) and its Title XVI counterpart, § 416.927(c)(2)). When identifying and considering relevant opinions, ALJs "must remember" that some medical records, such as medical source statements provided by a treating source, "may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *4 (S.S.A. July 2, 1996).

The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 404.1527(c)(1)-(6) (effective Aug. 24, 2012, to Mar. 26, 2017).[10] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." Wilder v. Colvin, No. 3:13-CV-3014-P, 2014 WL 2931884, at *3 (N.D. Tex. June 30, 2014) (quoting Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)); accord 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." Newton, 209 F.3d at

---

[10]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012, to Mar. 26, 2017). Even with the recent regulatory amendments, these factors remain relevant for claims filed before March 27, 2017. See 20 C.F.R. § 404.1527(c) (effective Mar. 27, 2017). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c provides details on how the administration considers and articulates medical opinions and prior administrative medical findings.

453.

In addition, under 20 C.F.R. § 404.1520b(c)(1), "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 3:13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept. 17, 2015); *accord Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*). Further, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 404.1520b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley*, 2015 WL 5836029, at *8 (citing 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (effective Mar. 26, 2012 to March 26, 2017)).

ALJs who find a treating source opinion not entitled to controlling weight must consider the six factors of § 404.1527(c) to properly assess the weight to give such opinions. *Newton*, 209 F.3d at 456. However, "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.). *Newton*, furthermore, does not require the detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-

founded than another." 209 F.3d at 458. Likewise, the detailed analysis under *Newton* is not neces-

sary when the ALJ has weighed the treating physician's opinion against opinions of other treating

or examining physicians who "have specific medical bases for a contrary opinion." *Id.*

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose

whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785,

790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and

may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*,

209 F.3d at 455-56. Additionally, for good cause shown, an ALJ may assign little or no weight to

an opinion from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of

a treating physician relative to other experts where the treating physician's evidence is conclusory,

is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise

unsupported by the evidence." *Id.* at 456.

The parties appear to treat all opinions of Dr. Tondapu and Dr. McHenry as medical opinions.

However, to be clear, opinions that (1) conclude that a claimant is disabled or unable to work due

to impairments or (2) assess a claimant's RFC "are not medical opinions" under the regulations. *See*

20 C.F.R. § 404.1527(d) (effective Aug. 24, 2012, to Mar. 26, 2017). Such opinions are specifically

excepted from the definition of "medical opinions" because the opinions address "issues reserved

to the Commissioner," *id.*, and "treating source opinions on issues reserved to the Commissioner are

never entitled to controlling weight or even special significance," *Dobbins v. Colvin*, No. 6:14-CV-

055-BL, 2016 WL 1179020, at *3 (N.D. Tex. Feb. 25, 2016) (recommendation of Mag. J.), *adopted*

*by* 2016 WL 1248911 (N.D. Tex. Mar. 25, 2016). ALJs do not err when they fail to credit legal con-

clusions on issues reserved to the Commissioner. *Tucker v. Astrue*, 337 F. App'x 392, 396-97 (5th

Cir. 2009) (per curiam).

In this case, there appears to be no dispute that Claimant has physical and visual impairments that limit his ability to work. The dispute arises from what effect those impairments has on his functional ability to engage in any substantial gainful activity. Claimant sets forth a thorough summary of the relevant medical evidence and states that his dispute is with the ALJ's findings regarding his physical limitations, not any mental impairments. *See* Pl.'s Br. at 2-11 & n.3. There is no need to reiterate all of the medical evidence and this recommendation will cite to the medical record as needed to address the issues raised in this appeal.

In April 2013, Thomas L. Marvelli, M.D., conducted an ophthalmological consultative examination of Claimant. *See* R. 551-52. He stated that Claimant "appears to have non-organic vision loss" and noted that "old records would be very valuable," but Dr. McHenry had not sent records. R. 552. He recommended no treatment and made no diagnosis. *Id.* He tested the visual acuity of both eyes with and without correction for distance and near-sightedness, but his handwritten notes are somewhat illegible. *See* R. 551. He noted "CF" for all categories related to Claimant's left eye and set out specific results for the right eye that are not legible. *See id.* He recorded no limitations resulting from claimant's vision loss. *See* R. 551-52.

On July 17, 2013, Dr. Tondapu completed an Impairment Questionnaire regarding Diabetes Mellitus. *See* R. 866-71. He noted that he had treated Claimant for diabetes since July 2012 and that Claimant had been treated since 2006. R. 866. He diagnosed insulin-dependent diabetes mellitus and identified the following positive clinical findings that demonstrate support for that diagnosis: (1) retinopathy, (2) episodic vision blurring, and (3) hyper-glycemic attacks. R. 866-67. He also stated that eye exams by Dr. McHenry and an optic nerve decompression provide laboratory and

diagnostic test results that support his diagnosis. R. 867. He noted complications from the diabetes: (1) "neuropathy with decreased sensation of feet" and (2) "optic neuritis." R. 868. Although Claimant treated his condition with insulin, his condition does not respond because "optic nerve and eye damage may not be reversible with insulin." *Id.*

Dr. Tondapu opined that Claimant's diabetes would limit him to sitting for no more than four hours out of an eight-hour workday and to standing/walking for no more than three hours. R. 869. Dr. Tondapu also stated that it would "be necessary or medically recommended" for Claimant not to continuously stand or walk. *Id.* He estimated that Claimant's diabetes would result in more than three absences from work each month. R. 870-71. Finally, he stated that Claimant's limited vision would affect his ability to work. R. 871.

On October 2, 2014, Dr. McHenry completed a Vision Impairment Questionnaire, but his handwriting is often illegible. *See* R. 1168-73. He began treating Claimant on July 2, 2012, for a vision impairment and opined that the prognosis was poor. R. 1168. He identified vision loss as the primary symptom supporting his diagnosis. R. 1170. He identified the following significant limitations: (1) reading normal-sized print; (2) processing visual information, such as driving, moving print, patterns, and computer screens; (3) avoiding normal work hazards, such as wet floors and overhangs; (4) walking on uneven terrain; (5) working with small objects, such as keyboards, coins, or labels; and (6) working with large objects, such as books, plates, and construction tools. R. 1171. Claimant, however, was able to "travel alone by bus." *Id.*

Dr. McHenry opined that Claimant constantly "experience[s] pain or other symptoms severe enough to interfere with attention and concentration." R. 1172. He expected the ongoing impairments to last at least twelve months and he stated that Claimant was not a malingerer. *Id.* He opined

12

that Claimant would need to take unscheduled breaks every hour during an eight-hour workday, each lasting fifteen minutes on average before returning to work. *Id.* Claimant's impairments were likely to produce both good and bad days and Dr. McHenry estimated that Claimant was likely to be absent from work more than three times a month on average. *Id.*

The ALJ specifically considered these medical records and recognized Dr. Tondapu and Dr. McHenry as treating sources. *See* R. 25-26. He noted both doctors' opinions that Claimant's impairments would cause him to miss work more than three times a month and that Dr. Tondapu opined that Claimant was "not capable of even sedentary work." *Id.* The ALJ gave these opinions "little weight" and explained: "In particular, Dr. Tondapu's limits on sitting, standing, and walking do not match up with treatment notes and the speculation of missing multiple days per month is not supported by the evidence of record." R. 26. Notably, the ALJ did not identify specific treatment notes or other evidence of record that support her position. The ALJ gave even less weight to opinions of the state agency consultants, except for medical opinions given on reconsideration by Randal Reid, M.D., which she gave "great weight."[11] *Id.*

The ALJ interpreted Dr. Tondapu's opinions as foreclosing sedentary work, but the doctor did not use that terminology. He instead set out specific functional limitations that would preclude such work generally. *See* Titles II & XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83–10 (PPS–101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (providing guidance as to the various exertional levels). Had Dr. Tondapu noted in his records that Claimant could not even work at a sedentary level, he would have been noting a conclusion that,

---

[11]The ALJ does not identify the consultant by name, but she identified Exhibit 3A as the relevant record, *see* R. 26, and Dr. Reid is the physician of record on reconsideration, *see* R. 73-87 (Ex. 3A).

of itself, is not a medical opinion. *See* Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *5 (S.S.A. July 2, 1996) (recognizing that use of phrases such as "sedentary work" to reflect "judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability"). While such a conclusion is not entitled to any special significance, his medical opinions, i.e., the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and other medical judgments as to the nature and severity of the claimant's impairments, *see* 20 C.F.R. § 404.1527(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017); SSR 96-5P, 1996 WL 374183, at *2, that support the legal conclusion may be entitled to special significance.

As treating sources, the medical opinions of Dr. Tondapu and Dr. McHenry are entitled to controlling weight if well-supported as required by the regulations and not inconsistent with other substantial evidence. The ALJ did not accord their opinions controlling weight, but instead gave them "little weight." R. 25-26. At this point, there is no need to determine whether the ALJ erred in not giving the opinions controlling weight because even if the Court were to find no error in that respect, such finding merely clears the first hurdle. Once the ALJ finds that a medical opinion of a treating source is not entitled to controlling weight, he or she must make the detailed analysis required by 20 C.F.R. § 404.1527(c) unless there is reliable medical evidence from a treating or examining physician controverting the opinions of the treating source.

In this case, the ALJ did not recite the six factors, although he does note in conclusory fashion that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527" and various social security rulings. *See* R. 22. An ALJ cannot substitute a general, con-

clusory statement for consideration of the six factors. Furthermore, while the ALJ decision reflects consideration of some factors, overall, the decision does not reflect consideration of all of the factors. It thus appears that the ALJ procedurally erred by not more fully considering and weighing the opinions of Dr. Tondapu and Dr. McHenry.

In briefing in this case, the Commissioner identifies treatment records of Dr. Tondapu that consistently contain notations that Claimant "feels good," had improved vision, and denied neuro-pathic pain. Def.'s Br. at 8 (citing R. 343-65, 844-50, 1141-61). The Commissioner also noted July 25, 2013 treatment notes which indicate that Claimant "feels fair," had improved diabetes mellitus, and denied neuropathic pain. *Id.* (citing R 1141-44). With respect to Dr. McHenry's opinion, the Commissioner pointed out that, "just days before completing the form," Dr. McHenry recorded no finding that Claimant's impairments would cause more than three absences from work each month on average. *Id.* (citing R. 1138-40). The Commissioner also disagrees that the ALJ failed to refer to specific medical evidence to refute the opinions, because the ALJ cited to the doctors' own treatment notes. *Id.* at 9. The Commissioner contends that *Newton* does not require the detailed analysis of the six factors when there is competing first hand medical evidence that supports the ALJ's decision. *Id.*

"*Newton* indeed eliminates the requirement to provide a detailed analysis when 'there is com-peting first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Howeth v. Colvin*, No. 3:12-CV-0979-P, 2014 WL 696471, at *7 (N.D. Tex. Feb. 24, 2014) (quoting *Newton*, 209 F.3d at 458). "Similarly, a detailed analysis is unnecessary when the ALJ has weighed the treating physician's opinion against other treating or examining physicians who 'have specific medical bases for a contrary opinion.'" *Perry v. Colvin*,

15

No. 3:13-CV-2252-P, 2015 WL 5458925, at *9 (N.D. Tex. Sept. 17, 2015) (quoting *Newton*, 209 F.3d at 458).

Although the Commissioner contends that opinions of Dr. Tondapu and Dr. McHenry are inconsistent without their own treatment notes, "inconsistencies within the records of the same treating physician 'do not fall within the competing first-hand medical evidence exception' recognized in *Newton*." *Id.* (quoting *Howeth*, 2014 WL 696471, at *8).

> The competing first-hand medical evidence exception to avoiding the detailed analysis of the six § 1527(c)(2) factors does not contemplate using other evidence from the same physician. To the contrary, use of such evidence is fully anticipated within two of the six required factors – support for the physician's opinions in the medical evidence of record and consistency of the opinions with the record as a whole.

*Howeth*, 2014 WL 696471, at *8. Inconsistencies within a treating source's own records "do not justify bypassing the detailed analysis of the six factors." *Perry*, 2015 WL 5458925, at *9; *accord Losasso v. Comm'r of Soc. Sec.*, No. 4:15-CV-0858-CAN, 2017 WL 1251076, at *8 (E.D. Tex. Mar. 24, 2017).

Additionally, although the ALJ noted the examination by Dr. Marvelli and interpreted the specific test results as showing Claimant has "20/20 near and distance visual acuity bilaterally with best correction," the ALJ did not interpret the meaning of "CF" for the left eye. R. 25. Given the handwriting of Dr. Marvelli, the 20/20 interpretation appears somewhat suspect. More importantly, the ALJ neither found – as a factual matter – that any opinion of Dr. Marvelli was more well-founded than those of Dr. McHenry nor weighed the opinions of Dr. McHenry against opinions of Dr. Marvelli. *See* R. 26. The ALJ instead merely recognized that "[t]here are somewhat inconsistent results" when comparing the consultative exam of Dr. Marvelli (Ex. 13F) with an exam one month later by Dr. McHenry (Ex. 14F). *See id.*

Although it appears that the ALJ erred in weighing and considering the medical opinions of Dr. Tondapu and Dr. McHenry, a procedural error does not require reversal and remand, unless the error affects the substantial rights of the claimant. *Snodgrass v. Colvin*, No. 3:11-CV-0219-P, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). To warrant reversal, the error must "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 3:11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

On the record before the Court, the failure to conduct the detailed analysis is not harmless error. Dr. Tondapu provided the only reliable medical opinion from a treating or examining source that assessed Claimant's abilities to sit, stand, and walk in a work setting. Furthermore, he and Dr. McHenry both opined that Claimant's impairments would cause more than three absences from work each month. Dr. McHenry also set out several significant vision limitations. These opinions reflect their judgment about the severity of Claimant's impairments, what he can still do despite his impairments, and limitations resulting from his impairments.

Rather than properly weigh and consider these medical opinions in accordance with the regulation and *Newton*, the ALJ accorded greater weight to medical opinions of the non-examining consultant (Dr. Reid). *See* R. 26. From his review of the medical record, Dr. Reid opined that Claimant could occasionally carry fifty pounds, twenty-five frequently, and could stand/walk for about six hours out of an eight-hour workday and sit for a similar period of time. R. 81. He found only one

vision limitation – accommodation in both eyes.[12] *See* R. 81-82. The ALJ accepted Dr. Reid's opinions that Claimant could stand/walk for six hours in an eight-hour workday and sit six hours, whereas Dr. Tondapu had opined that Claimant was limited to sitting for four hours and standing/walking for three hours. The ALJ also accepted the visual limitation noted by Dr. Reid, but did not accept other visual limitations noted by Dr. McHenry.

In making her RFC assessment, the ALJ rejected specific medical opinions of Dr. Tondapu and Dr. McHenry. To characterize their estimated absences as speculation ignores their medical judgment. Had the ALJ considered the medical opinions regarding estimated monthly absences rather than simply rejecting them as speculation, it is conceivable that she may have reached a different conclusion. *See Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015); *Conte v. Comm'r Soc. Sec. Admin.*, No. 4:16-CV-0048-CAN, 2017 WL 1037570, at *8 (E.D. Tex. Mar. 16, 2017). Furthermore, rejecting medical opinions when there is no contrary opinion from a treating or examining source requires usurping the physicians' role. *See Newton*, 209 F.3d at 453-58. "That is neither the role of the ALJ nor this Court. Neither the courts nor ALJs may rely on their own medical opinions as to the limitations presented by a claimant's impairments." *Howeth*, 2014 WL 696471, at *11 (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (per curiam) (reversing denial of benefits when the ALJ impermissibly relied on his own medical opinions as to limitations presented by the claimant's impairments)). It is reversible error for ALJs to substitute their own medical opinions for those of a treating physician. *Evans v. Colvin*, No. 1:14-CV-202-BL, 2015 WL 9685552, at *3 (N.D. Tex. Dec. 8, 2015) (recommendation of Mag. J.), *adopted by* 2016

---

[12]At the hearing, the ALJ explained that, in this sense, "accommodation" means "moving things to and from space," so that Claimant was visually limited in moving things. *See* R. 56-57.

WL 112645 (N.D. Tex. Jan. 8, 2016).

As discussed earlier, like *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See* 209 F.3d at 458. While the ALJ relied on medical opinions of an agency consultant, such opinions do not constitute first-hand medical evidence, because they were formed on a second-hand basis from a review of then existing medical records. With respect to opinions of Dr. Marvelli, the ALJ did not specifically find any opinion more well-founded than those of Dr. McHenry. Like *Newton*, this is not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.*

Instead, like *Newton*, the ALJ in this case rejected medical opinions of Dr. Tondapu based only on opinions of a non-examining physician. *See id.* With respect to the opinions about Claimant's exertional ability to engage in work-type activities, the ALJ did not reject the medical opinions of Dr. Tondapu due to any inconsistency with any medical opinion from a different treating or examining source. Although the ALJ did compare eye exams by Dr. Marvelli with those of Dr. McHenry, it does not appear that the ALJ rejected any medical opinions of Dr. McHenry regarding Claimant's visual limitations due to any opinion from Dr. Marvelli or any other treating or examining source. The ALJ erred to the extent she relied on the opinions of the non-examining consultant. Furthermore, to the extent the ALJ perceived a need for an additional or updated medical opinion, she took no steps to secure such opinion from any medical expert. The medical record before the ALJ provides no basis for rejecting the exertional limitations noted by Dr. Tondapu or the visual limitations noted by Dr. McHenry.

The Commissioner in this case carried her Step 5 burden through testimony of a VE who identified light and sedentary jobs based upon the RFC assessed by the ALJ. Had the ALJ properly considered the medical opinions of Dr. Tondapu, there is a realistic possibility that her RFC assessment would have changed. The opinions of Dr. Tondapu support limitations greater than the RFC assessment. A change in the limitations within the questioning to the VE would cast doubt upon the existence of substantial evidence to support the ALJ's decision because to constitute substantial evidence to support a Step 5 finding of non-disability, testimony from a VE must include all limitations warranted by the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). Accordingly, to rely on the VE testimony to satisfy the Step 5 burden, the ALJ's hypothetical questioning would need to include all limitations warranted by the evidence.

In this case, the VE not only testified about available jobs for an individual with the limitations set out by the ALJ, but also provided testimony regarding limitations that differed from those found by the ALJ. *See* R. 56-58. The VE testified that all of the identified positions would tolerate only five minutes for off-task behaviors maximum per hour and only permit one to two absences per month. R. 56. The VE further testified that a hypothetical individual who could only sit for four hours would be unable to do the work required for the identified sedentary positions. R. 58. Additionally, although the VE provided no testimony as to whether being limited to standing/walking for three hours would impact her testimony, she testified that an individual who could stand only two hours would be unable to do the work required for the light positions. R. 57. These types of additional questioning show how altering the limitations caused by a claimant's impairments can alter the Step 5 outcome. *See Davidson*, 164 F. Supp. 3d at 944; *Conte*, 2017 WL 1037570, at *8.

The Court should find that the ALJ improperly considered and weighed opinions of Dr. Tondapu regarding Claimant's exertional limitations and Dr. McHenry regarding visual limitations. There is no good cause to discount the weight of those opinions relative to any other expert. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had she conducted that analysis and properly considered and weighed the opinions of the treating physicians there a realistic possibility that she would have altered the hypothetical to the VE to include different visual limitations and greater exertional limitations than assessed in the current RFC. Consequently, the procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Claimant's substantial rights have been affected by the consideration and weight accorded to the opinions of the treating physicians by the ALJ. This procedural error is not harmless and warrants remand.

## B.  Credibility Determination[13]

Claimant also argues that the ALJ improperly evaluated his credibility. Although the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons set forth herein." R. 26.

Courts accord "great deference" to an ALJ's credibility assessment when substantial evidence supports it. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *accord Villa v. Sullivan*, 895 F.2d

---

[13]Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy" and in doing so, clarified "that subjective symptom evaluation is not an examination of an individual's character." Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). When the ALJ issued her decision, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." *See* Policy Interpretation Ruling Titles II and XVI:  Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186, at *7 (S.S.A. July 2, 1996).

1019, 1024 (5th Cir. 1990). While given circumstances may require ALJs to state specifically their reasons for finding subjective complaints not credible, they are not required to follow any formalistic rule or language. *See Falco v. Shalala,* 27 F.3d 160, 163-64 (5th Cir. 1994). In this case, however, the ALJ found that the record did not support Claimant's "asserted uncontrollable bathroom breaks" and noted the "somewhat inconsistent" results on vision testing by Dr. McHenry and Dr. Marvelli. R. 26. It further appears that the ALJ found Claimant not credible at least in part because she discounted the opinions of Dr. Tondapu and Dr. McHenry. Given the reversible error related to the consideration given to those opinions, the Court should not find substantial evidence to support the ALJ's credibility finding. On remand, the ALJ should re-assess Claimant's credibility, unless the Commissioner instead applies SSR 16-3p, which became effective on March 16, 2016.

## C. Flawed Vocational Testimony

Claimant also urges the Court to reverse the Commissioner's decision because the ALJ relied on flawed testimony from the vocational expert. In light of the reversible error resulting from the ALJ's consideration of medical opinions of Dr. Tondapu and Dr. McHenry, there is no need to further determine whether the ALJ erred in relying on the VE testimony. Based on the improper consideration of medical opinions of Claimant's treating physicians, the ALJ will necessarily need to re-access Claimant's physical RFC, formulate appropriate hypothetical questions for a VE based on the new assessment, and re-question a VE.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that the administrative law judge committed reversible error by not properly considering opinions of Claimant's treating physicians and that this error impacts the other errors alleged by Claimant. The

undersigned thus **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision to deny benefits and **REMAND** this case for further administrative proceedings consistent with this recommendation.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 10th day of August, 2017.**

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**